UNITED STATES DISTRICT COURT
DISTRICT OF CONNECITCUT

_____

KEVIN DAVID BACHAND,                :          CIVIL NO. 3:17 – CV- 01323
        Plaintiff,                           :
                                                     :
v.                                                      :
                                                     :
NANCY A. BERRYHILL,                   :
    Acting Commissioner of Social Security,  :

_____

**MEMORANDUM OF DECISION RE: MOTION TO DISMISS (ECF # 12)**

**Preliminary Statement of the Case**

By this action, the plaintiff appeals the Commissioner's determination that he is not eligible for benefits under Titles II and XVI of the Social Security Act. The Commissioner filed a motion to dismiss the appeal on the ground that it was not timely filed. The plaintiff avers in response that the appeal was timely filed, or in the alternative, that the court should apply principles of equitable tolling and allow the appeal to proceed. For the reasons set forth below, the motion is GRANTED.

**Standard of Review**

The Social Security Act provides the exclusive remedy for a plaintiff seeking judicial review of the Commissioner's final decision. *See* 42 U.S.C. §§ 405(g), (h). Section 405(g) provides in pertinent part:

> Any individual, after a final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

The Commissioner may raise a limitations defense in a Rule 12(b)(6) motion. *See Paniagua v. Comm'r of Soc. Sec.*, 15-cv-20138 (JCM), 2017 WL 699117, at *2 (S.D.N.Y. Feb. 21, 2017). In deciding a Rule 12(b)(6) motion, the court accepts all factual allegations in the complaint as true and draws all reasonable inferences from those allegations in plaintiff's favor. *See Crawford v. Cuomo,* 796 F.3d 252, 256 (2d Cir. 2015); *see also Alamo v. Berryhill*, No. 3:18-CV-00210 (JCH), 2018 WL 3596751, at *2 (D. Conn. July 26, 2018).

**Facts and Allegations**

The series of events preceding the filing of this action are not in dispute. On December 11, 2014, the plaintiff's prior appeal regarding his claim for disability benefits was remanded from this court for further proceedings before the Commissioner. Thereafter, on August 26, 2015, the Appeals Council remanded the case to the Administrative Law Judge ("ALJ") that had rendered the original decision from which the plaintiff had first appealed to this court. On January 13, 2017, the ALJ issued a decision, again denying the plaintiff's claim for benefits under Title II and XVI. The decision was mailed to the plaintiff the same day along with a cover letter explaining the plaintiff's options. A copy of both the letter and the opinion was also sent to plaintiff's counsel.

The letter accompanying the ALJ decision advised the plaintiff that the plaintiff could, if he disagreed with the decision, submit "written exceptions" to the decision. In bold font and separate from all other text, the letter provided: "**Time Limit to File Written Exceptions (30 Days)**." Immediately thereafter, the letter provided:

> You must file your written exceptions with the Appeals Council **within 30 days** of the date you get this notice. The Appeals Council assumes that you got this notice within 5 days after the date of the notice unless you show that you did not get it within the 5-day period.

The letter also explained that the plaintiff could seek additional time to file written exceptions by filing a request for same "within 30 days of the date you get the notice." It advised the plaintiff that the Appeals Council might review the ALJ decision on its own even if the plaintiff did not file written exceptions and that the plaintiff would be notified within 60 days if the Council decided to review the decision on its own.

Finally, the letter provided:

**Filing An Action In Federal District Court**

> If you do not file written exceptions and the Appeal Council does not review my decision on its own, my decision will become final on the 61st day following the date of this notice. After my decision becomes final, you will have 60 days to file a new civil action in Federal district court. You will lose the right to a court review if you do not file a civil action during the 60-day period starting with the day my decision becomes final. However, you can ask the Appeals Council to give you more time to file a civil action. The Appeals Council will grant your request for more time only if you can show a good reason for needing more time. We will not send you any more notices about your right to file in Federal district court.

Thus, on January 13, 2017, or within 5 days thereof, the plaintiff was advised clearly and unequivocally that he was obligated to file written exceptions to the ALJ Ruling within 30 days or to seek more time to do so within 30 days. The correspondence was equally clear that failure to do so would result in the decision becoming "final" for purposes of the limitations period for filing an action in the district court.[1]

Thereafter, the plaintiff missed each deadline set for preserving his pursuit of disability benefits. On March 13, 2017, the plaintiff sent an untimely request for additional time to submit written exceptions. By letter dated May 2, 2017, the Appeals Council advised the plaintiff as

---

[1] The substance of the letter is consistent with the Commissioner's regulations regarding decisions after remand. *See* 20 C.F.R. §416.1484. The plaintiff does not argue to the contrary. His counsel professes however that he was unaware that the "post remand" procedures are different from the more commonly used procedures following an initial adverse decision from the ALJ. He surmises that the January 13, 2017 letter was filed by his staff, without substantive review, with a reminder set to submit exceptions within 60 days.

much, reiterating the 30-day limitation previously explained in the January 13, 2017 letter. However, the Appeals Council also gave the plaintiff 20 days to establish that he had, in fact, sent the request for more time within the 30 day period. The plaintiff made no effort to make such a showing.[2] Hearing nothing, the Appeals Council sent another letter dated June 26, 2017 advising the plaintiff that his submission was untimely and the ALJ decision was the final decision of the Commissioner after remand. The plaintiff commenced the instant action on August 4, 2017.

**Discussion**

It is settled that the United States cannot be sued without its consent. *Lehman v. Nakshian,* 453 U.S. 156, 160 (1981). Congress has given such consent for purposes of challenging the Commissioner's decision regarding claims under Title II and Title XVI of the Act. *See* 42 U.S.C. §§405(g) and 405(h). As noted above, a person seeking judicial review of the Commissioner's decision may commence "a civil action… within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow." 42 U.S.C. §405(g). The time limit provided for under the Act for a plaintiff to commence a civil suit "is not jurisdictional but rather constitutes a period of limitations." *Bowen v. City of New York*, 476 U.S. 467, 478 (1986).

The Commissioner avers that the decision of the ALJ became final on March 14, 2017 and that therefore, the plaintiff was required to commence this action on or before May 13, 2017. Insofar as the action was commenced on August 4, 2017, the Commissioner seeks dismissal of the appeal. Contrary to the Commissioner's claim, the plaintiff avers that the appeal was timely

---

[2] Even if the plaintiff and his counsel misread, or did not read, the January 13, 2017 letter, upon receipt of the letter dated May 2, 2017, their individual and collective error was made manifest. Further review by either would have revealed that the limitations period for bringing an action in federal court was set to expire on May 13, 2017. At that point, there was still time to meet the requirement or to seek an extension from the Commissioner.

4

filed because it was filed within 60 days of his receipt of the June 26, 2017 letter. Alternatively, the plaintiff avers that the action should be deemed timely filed under the principles of equitable tolling.

As to the plaintiff's first argument that the appeal was timely filed, the court is not persuaded. The June 26, 2017 letter was simply the final correspondence between the Commissioner and the plaintiff denying as untimely his request for an extension of time to submit written exceptions to the ALJ Ruling. It provides in pertinent part:

> The Administrative Law Judge issued a decision dated January 13, 2017. You sent exceptions and a request for additional time dated March 13, 2017. On May 2, 2017, we sent you a letter requesting proof that you filed the exceptions and asked for more time within the 30-day time limit. No additional information was received.
>
> We find that you did not send us exceptions or ask for more time to do so within 30 days of the date you received the Administrative Law Judge's decision.
>
> **What This Action Means**
>
> The Administrative Law Judge's decision is the final decision of the Commissioner of Social Security after remand.

The plaintiff relies upon the final sentence as establishing the date upon which the decision became final for purposes of triggering the 60-day limitations period. His reading is not reasonable. First, his reading is contrary to both the regulations cited above and the information provided by the Commissioner in the January 13, 2017 letter. The sentence relied upon merely advises the plaintiff, accurately, that the ALJ decision "is final" pursuant to those regulations. By June 26, 2017, the decision had become final under the terms of the regulations, as set forth in the January 13, 2017 letter. Had the plaintiff provided the proof sought in the May 2, 2017 letter, the Appeals Council might have granted additional time and the decision would not then have been final. Or even if the request was deemed timely but denied, the appeals period would

5

run from such a denial. But the plaintiff did nothing in response to the May 2, 2017 letter and the Appeals Council had no reason to *sua sponte* alter the timelines set forth in the January 13, 2017 letter.

In addition, the May 2, 2017 letter advised the plaintiff for a second time of the 30-day time limitation. Upon receipt of this letter, the plaintiff was aware that he had not complied with the regulations as set forth in the January 13, 2017 letter. He further knew he could not, and therefore would not, submit information to the Appeals Council establishing that his request had, in fact, been filed within 30 days. Rather than retrieve and review the January 13, 2017 letter (which would have revealed the approaching appeal deadline); rather than contact the Appeals Council to explain the error; or rather than request an extension within which to file an appeal in district court, the plaintiff did nothing. Eventually, the Appeals Council closed out his inquiry, receiving no word from him as requested in the May 2, 2017 letter and advised the plaintiff that it had done so in the June 26, 2017 letter. In light of this series of events, the plaintiff's reliance on the June 26, 2017 letter to restart the statutory limitations period is simply not reasonable.

The plaintiff's reliance on *Carrol v. Sullivan,* 802 F.Supp. 295 (C.D. Cal. 1992), is misplaced. Although the procedural history is similar to that presented here, the district court did not, as averred by the plaintiff, reject the Commissioner's argument regarding when the ALJ decision became final. Rather, the court held, under the "unique facts" presented there, that equitable tolling was appropriate and that therefore the filing was deemed timely. Indeed, as noted in *Carrol,* the court recognized existing appellate precedent that the denial of an untimely motion to extend the time within which to file an appeal did not restart the running of the statutory limitations period to bring an action in federal court. *See Matlock v. Sullivan,* 908 F.2d 492 (9th Cir. 1990).

Finally, it would sew chaos into the appeals process if a plaintiff, fully and unequivocally advised as to the limitations period, could extend the limitations period *de facto* by making untimely challenges to a decision, thereby extending the date by which the decision becomes "final" until such time as the Commissioner rejects the untimely challenge. *See Bowen*, 476 U.S. at 481 ("In addition to serving its customary purpose, the statute of limitations embodied in § 405(g) is a mechanism by which Congress was able to move cases to speedy resolution in a bureaucracy that processes millions of claims annually. Thus, the limitation serves both the interest of the claimant and the interest of the Government.").

The plaintiff next asks this court to find, under the circumstances presented here, that the limitations period should be equitably tolled and his appeal permitted to proceed on its merits. The doctrine of equitable tolling allows courts to "deem filings timely where a litigant can show that 'he has been pursuing his rights diligently' and that 'some extraordinary circumstance stood in his way.'" *Torres v. Barnhart*, 417 F.3d 276, 279 (2d Cir. 2005) (citing *Pace v. DiGuglielmo*, 544 U.S. 408 (2005)). Equitable tolling is generally warranted only in "rare and exceptional" circumstances. *Molnar v. Legal Sea Foods, Inc.,* 473 F.Supp.2d 428, 430 (S.D.N.Y. 2007). The plaintiff bears the burden of establishing these extraordinary circumstances. *Davila v. Barnhart,* 225 F. Supp. 2d 337, 339 (S.D.N.Y. 2002). Equitable tolling of the limitations period found in Section 405(g) is not "infrequently appropriate, as Congress intended to be 'unusually protective' of claimants in this area." *Canales v. Sullivan,* 936 F.2d 755, 758 (2d Cir. 1991).

Government misconduct is an example of a circumstance under which equitable tolling may be appropriate. *See Bowen*, 476 U.S. at 467 ("Tolling, in the rare case such as this . . . serves the purpose of the Act where . . . the Government's secretive conduct prevents plaintiffs from knowing of a violation of rights."); *State of New York v. Sullivan,* 906 F.2d 910, 917 (2d

7

Cir. 1990) ("[E]quitable tolling is in order when government misconduct keeps plaintiffs from appreciating the scope of their rights."); *see also Dixon v. Shalala*, 54 F.3d 1019 (2d Cir. 1995) (holding that equitable tolling was appropriate where it was government's clandestine policy that resulted in disability claimants being routinely denied benefits).

In addition, incapacity on the part of the plaintiff which precluded a timely filing may make equitable tolling appropriate. *See Canales*, 936 F.2d at 758 (holding that where a SSI claimant avers incapacity due to mental impairment during the appeal period, the district court should permit the claimant to present evidence in support of the claim, after which the court can, considering all the circumstances, determine if equitable tolling is appropriate). A "simple miscalculation" by an attorney is generally inadequate to create the extraordinary circumstances equitable tolling requires. *Dillon v. Conway*, 642 F. 3d 358, 362 (2d Cir. 2011) (citing *Holland v. Fla.*, 560 U.S. 631, 651 (2010)). However, although "attorney error normally will not constitute the extraordinary circumstances required to toll [a] limitations period . . . at some point, an attorney's behavior may be so outrageous or so incompetent as to render it extraordinary." *Baldayaque v. United States,* 338 F.3d 145, 152 (2d Cir. 2003).

Here, the question upon which the issue of equitable tolling will turn is whether the plaintiff was thwarted in his efforts by some "extraordinary circumstance" that "stood in his way" of filing a timely appeal. The plaintiff does not aver that he was incapacitated during the appeal period rendering him incapable of pursuing his rights as contemplated under *Canales* and its progeny. Nor does plaintiff's counsel profess error, let alone error of such an egregious nature which would cause the court to toll the limitations period under the standards set forth in *Baldayaque*. After ignoring the January 13, 2017 letter and failing to act upon its terms, the plaintiff claims that ambiguities in the May 2, 2017 letter and the June 26, 2017 letter were

sufficiently misleading as to implicate equitable tolling due to the misfeasance or malfeasance on the part of the Commissioner. However, as noted, the plaintiff's reading of these letters to create ambiguity or confusion as to when the ALJ decision became final fails to consider the January 13, 2017 letter. Simply because plaintiff or plaintiff's counsel did not read or ignored the letter, does not take the letter and its contents out of the analysis of whether the communications from the Commissioner were sufficiently misleading as to implicate equitable tolling.

By letter dated January 13, 2017, the Commissioner advised the plaintiff unequivocally, that absent certain events which might expand the time period (as is permitted by the statute), the decision sent on January 13, 2017 would become "final" for purposes of bringing an action in federal court on the 61st day following receipt of the decision. The letter further advised the plaintiff that once the decision became final, the plaintiff was required to commence the instant action within 60 days. No later than May 2, 2017, the plaintiff was aware that he had failed to timely request an extension of time and that therefore, the decision would have been deemed "final" on March 14, 2017. To the extent the May 2, 2017 letter left open the possibility of an extension, it did so only to the extent the plaintiff could prove that he had made a timely request. The plaintiff knew he had not made a timely request and so knew no such proof would be offered. Further, the May 2, 2017 letter accurately advised the plaintiff that proof of timeliness was required in order for his March 13, 2017 request to be acted favorably upon. Although the May 2, 2017 letter indicated that the Commissioner would send further correspondence "telling you about your further rights to appeal in this case," this does not create appeal rights that do not otherwise exist. The plaintiff, at all times represented by counsel, had all the information he needed to protect his appeal rights. If he had erred prior to May 2, 2017, his situation was very clear upon receipt of the May 2, 2017 letter. The June 26, 2017 letter, also precipitated by the

9

plaintiff's own conduct in failing to respond in any fashion to the May 2, 2017 letter, simply advised the plaintiff that his request was denied as untimely.

In sum, the correspondence from the Commissioner to the plaintiff, read together and in context, do not establish government misconduct so as to implicate equitable tolling principles. Nor has the plaintiff identified any other "extraordinary circumstances" which prevented him from filing a timely appeal.

The appeal is DISMISSED.

It is So Ordered.


/S/ Kari A. Dooley
Kari A. Dooley
United States District Judge


Dated at Bridgeport, Connecticut this 19th day of November 2018.